UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ROBIN A. PRATT,

                       Plaintiff,

      -against-

ENZO BIOCHEM, INC., HANSEN LEE,
GINA FORTUNATO,
(sued in their individual capacities pursuant
to New York Executive Law §290 *et seq.*),
                       Defendants.
-------------------------------------------------------X

CV: 19-5865

**COMPLAINT**
**JURY TRIAL DEMANDED**

ROBIN A. PRATT ("plaintiff"), by her attorneys SCOTT MICHAEL MISHKIN, P.C., complaining of ENZO BIOCHEM,INC., ("Enzo"), HANSEN LEE ("Lee") and GINA FORTUNATO ("Fortunato")(collectively referred to as "defendants"), alleges as follows:

## PRELIMINARY STATEMENT

This case is brought under 42 U.S.C. §1981 of the Civil Rights Act of 1866 ("Section 1981") and the New York State Human Rights Law, Executive Law § 290 *et seq.* ("NYEL"), against defendants for (1) their discriminatory treatment of plaintiff due to her race; (2) for defendants' retaliation against plaintiff for engaging in protected activity and (3) for the creation of a hostile work environment based on defendants harassment of plaintiff due to her race.

## JURISDICTION

FIRST: This Court has jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343, and supplemental jurisdiction over Plaintiffs' pendant claims brought under NYEL pursuant to 28 U.S.C. §1367(a) as they arise from the same events and controversy.

SECOND: Therefore this court has proper jurisdiction in this action.

1

## VENUE

THIRD: The unlawful practices alleged below were committed within the County of Suffolk, State of New York.

FOURTH: At the time of the unlawful practices, plaintiff was, and still is, a resident of Suffolk County in the State of New York.

FIFTH: The causes of action arose in the State of New York while plaintiff was employed by defendant Enzo, which conducts substantial business in the County of Suffolk.

SIXTH: Therefore, this Court is the proper venue.

## PARTIES

SEVENTH: At all times relevant to this action, plaintiff was and is an adult individual residing in the State of New York, County of Suffolk.

EIGHTH: At all times relevant to this action, plaintiff's race was and is Hispanic.

NINTH: At all times relevant to this action, Plaintiff was an "employee" of Enzo as defined under NYEL and Enzo is considered a covered entity under NYEL.

TENTH: At all times relevant to this action, plaintiff was able to successfully complete all the essential functions that were required of her at Enzo.

ELEVENTH: Enzo is a life sciences and biotechnology company focused on harnessing genetic processes to develop research tools, diagnostics and therapeutics and provides reference laboratory services to the medical community.

TWELFTH: Enzo conducts substantial business in the County of Suffolk and has a physical place of business located at 60 Executive Boulevard in Farmingdale, New York.

THIRTEENTH: Enzo has its Human Resource (HR) Department located at 10 Executive Boulevard in Farmingdale, New York.

FOURTEENTH: Enzo has an official or customary practice that caused plaintiff to be subjected to discrimination based on her race and subjected to retaliation based on her engagement in protected activity.

FIFTEENTH: Enzo's inaction, demonstrated by its persistent failure to discipline the named defendants for discriminating and retaliating against plaintiff, gives rise to an inference of an unlawful policy or ratification of unlawful conduct.

SIXTEENTH: At all times relevant to this action, Lee was Head of Client Operations and had the authority to hire, fire and discipline employees.

SEVENTEENTH: Upon information and belief, Lee's race was and is Asian.

EIGHTEENTH: Lee had the power to do more than carry out personnel decisions made by others and is thereby individually liable for his discriminatory treatment and adverse actions against plaintiff.

NINETEENTH: Lee acted with the understanding that his actions violated clearly established legal rights of plaintiff.

TWENTIETH: Lee is named in his individual capacity because he knew, or should have known, that his and Enzo's ongoing/continuous willful and malicious actions against plaintiff violated her clearly established constitutional and statutory rights, of which a reasonable person would have known that plaintiff's rights were being violated.

TWENTY-FIRST: The contour of plaintiff's right not to be discriminated against due to her race, and not be treated adversely as compared to her similarly situated co-workers, is sufficiently clear that a reasonable official, such as Lee, should have known that his actions violated plaintiff's rights.

TWENTY-SECOND: Lee arbitrarily, selectively and with malicious intent discriminated against plaintiff based on her race and retaliated against plaintiff for engaging in protected activity.

TWENTY-THIRD: Lee aided, abetted, incited, compelled, and/or coerced the discrimination against plaintiff based on race and retaliated against plaintiff for her engagement in protected activity, in violation of NYEL.

TWENTY-FOURTH: At all times relevant to this action, Fortunato was the Director of HR at Enzo and had the authority to hire, fire and discipline employees.

TWENTY-FIFTH: Fortunato's race was and is Caucasian.

TWENTY-SIXTH: Fortunato had the power to do more than carry out personnel decisions made by others and is thereby individually liable for her discriminatory treatment and adverse actions against plaintiff.

TWENTY-SEVENTH: Fortunato acted with the understanding that her actions violated clearly established legal rights of plaintiff.

TWENTY-EIGHTH: Fortunato is named in her individual capacity because she knew, or should have known, that her and Enzo's ongoing/continuous willful and malicious actions against plaintiff violated her clearly established constitutional and statutory rights, of which a reasonable person would have known that plaintiff's rights were being violated.

TWENTY-NINTH: The contour of plaintiff's right not to be discriminated against due to her race, and not be treated adversely as compared to her similarly situated co-workers, is sufficiently clear that a reasonable official, such as Fortunato, should have known that her actions violated plaintiff's rights.

4

THIRTIETH: Fortunato arbitrarily, selectively and with malicious intent discriminated against plaintiff based on her race and retaliated against plaintiff for her engagement in protected activity.

THIRTY-FIRST: Fortunato aided, abetted, incited, compelled, and/or coerced the discrimination against plaintiff based on her race and retaliated against plaintiff for her engagement in protected activity in violation of NYEL.

## FACTS

THIRTY-SECOND: Plaintiff began her career with Enzo on or about March 3, 2008 when she was hired to be Enzo's Supervisor in the Phlebotomy department.

THIRTY-THIRD: Due to plaintiff's exceptional performance, she was promoted to the Manager of Phlebotomy in October 2008.

THIRTY-FOURTH: Over the next ten (10) years, plaintiff continued to perform her responsibilities at an exceptional level without any complaints from management or clients related to her job performance.

THIRTY-FIFTH: On or about November 27, 2017, plaintiff began to report to a new supervisor, Lee.

THIRTY-SIXTH: Up until that point, plaintiff did not have any performance issues and in fact received performance appraisals that demonstrated plaintiff was either meeting requirements or exceeding requirements.

THIRTY-SEVENTH: However, shortly after Lee joined Enzo, he became overly critical of plaintiff's performance.

THIRTY-EIGHTH: In less than eight (8) weeks after joining Enzo, Lee began to subject plaintiff to a hostile and discriminatory work environment due to her being Hispanic.

THIRTY-NINTH: On or about March 2018, Lee began to visit plaintiff's work sites and made comments to the supervisors that plaintiff would not be working at Enzo much longer.

FORTIETH: Lee also told Enzo's Vice President of Sales, Bruce Dey, and Enzo's Senior Territory Manager/Sales, Imran Saeed, that plaintiff hired "too many Hispanic people" and "this had to stop" and "that [plaintiff] had to go" demonstrating Lee's discriminatory animus towards plaintiff due to her Hispanic race.

FORTY-FIRST: Lee would regularly instruct plaintiff's staff that they could disregard the chain of command and go over plaintiff's head and to call him if they needed anything. This created confusion amongst plaintiff's staff and frustrated plaintiff's ability to be a Manager.

FORTY-SECOND: Plaintiff spoke to Fortunato about these actions and was told that the chain of command was irrelevant and that Lee could speak to whomever he wanted and say to whomever whatever he wants.

FORTY-THIRD: Plaintiff had a good faith belief, due to her being Hispanic, that Lee was seeking to discriminate against plaintiff by destroying her reputation so that her subordinates would not respect her as Enzo's Manager.

FORTY-FOURTH: On or about March 16, 2018, plaintiff formally complained to HR that since Lee's arrival at Enzo he has created a hostile work environment, has engaged in harassing behavior, and has been intimidating and offensive.

FORTY-FIFTH: Plaintiff spoke and sent emails to senior management at Enzo including Debbie Sohmer, Doctor Schapfel, Fortunato from HR, and Michelle Wispelwey,

6

Territory Manager, about the treatment she was facing and stated that she felt like she was being treated unfairly in comparison to others and that several employees felt they were also being discriminated against for being people of color.

FORTY-SIXTH: The complaint fell on deaf ears as Plaintiff kept asking for an update and a meeting regarding her complaint but that never happened and no one from Enzo followed up with plaintiff to her satisfaction.

FORTY-SEVENTH: On or about June 2018, plaintiff complained to Fortunato about the way Lee was targeting her and expressed that it was because he wanted to replace her and was using unfounded complaints to try and ruin plaintiff's reputation. Plaintiff said she felt like Fortunato and Enzo were not doing anything to stop the harassment. Plaintiff told Fortunato that she felt like Lee was targeting her because she was Hispanic.

FORTY-EIGHTH: After receiving no help from Enzo and its senior management, plaintiff, on or about October 2018, went to the EEOC.

FORTY-NINTH: Plaintiff was told by the EEOC that she should allow HR to rectify her claim.

FIFTIETH: However, when plaintiff would try and speak with Fortunato, she wasn't available.

FIFTY-FIRST: Fortunato knew that Plaintiff was in the same building for weekly scheduled department meetings that took place every Monday but still never tried to speak with or meet plaintiff in order to address her complaints.

FIFTY-SECOND: The inaction by Fortunato allowed the discriminatory environment at Enzo to continue.

FIFTY-THIRD: On or about November 1, 2018, Plaintiff informed Doctor Schapfel that she met with Fortunato on October 31, 2018 to let Fortunato know that she opened up a claim with the EEOC.

FIFTY-FOURTH: Plaintiff informed Doctor Schapfel of this because she was receiving no help from Fortunato and also believed that Fortunato was not impartial.

FIFTY-FIFTH: After plaintiff's formal complaint, Lee increased his disparate treatment against plaintiff in order to retaliate against her for engaging in protected activity.

FIFTY-SIXTH: Plaintiff was often told by Enzo's sales people that Lee was looking to get rid of plaintiff in order to make Enzo "more white."

FIFTY-SEVENTH: Plaintiff's good faith belief that she was being discriminated against due to her race was further supported by the fact that Lee removed many of plaintiff's Manager responsibilities and gave them to a non-Hispanic employee, Elizabeth Newton ("Newton").

FIFTY-EIGHTH: By giving the responsibilities to Newton, Lee fundamentally altered the terms and conditions of plaintiff's employment, all in an effort to discriminate and retaliate against plaintiff.

FIFTY-NINTH: Newton was less experienced than plaintiff and was less qualified than plaintiff.

SIXTIETH: However, due to the fact that Newton was not Hispanic she received preferential treatment from Lee that the similarly situated Hispanic employees, such as plaintiff, did not receive.

SIXTY-FIRST: Further demonstration of Lee's discriminatory animus towards Hispanics was demonstrated when Lee sought to have plaintiff discipline a Hispanic employee,

8


Sarah San Miguel, but not a similarly situated employee of African American race, Cheryl Moultrie.

SIXTY-SECOND: Lee was seeking to terminate Sarah San Miguel over a concern of missing money from the Bay Shore office.

SIXTY-THIRD: Once Sarah San Miguel was found to not be at fault for the missing money, Lee wanted plaintiff to fire Sarah San Miguel anyway for what he claimed were lateness issues.

SIXTY-FOURTH: However, Cheryl Moultrie was also guilty of lateness to the same degree as Sarah San Miguel but Lee only sought to go after the Hispanic employee in order to discriminate against the employees of Hispanic race.

SIXTY-FIFTH: Furthermore, Enzo's Patchogue office also had issues with missing money but no discipline was sought by Lee.

SIXTY-SIXTH: Newton was the Supervisor at both locations where money was missing but never received any discipline, demonstrating the preferential treatment Newton was receiving over plaintiff due to the fact that Newton was not Hispanic.

SIXTY-SEVENTH: Lee furthered his discrimination and retaliation against plaintiff when, on or about October or November of 2018, he accused plaintiff of not being in corporate compliance because her corporate issued car did not have GPS.

SIXTY-EIGHTH: Plaintiff inquired if all cars were being brought into compliance and Lee stated that only two (2) cars, plaintiff's and a Richard Paladino's were company cars.

SIXTY-NINTH: Plaintiff asked where she needed to go in order to have the GPS installed and had said GPS installed.

SEVENTIETH: Lee's discriminatory and retaliatory motivation was revealed a few weeks later when plaintiff spoke to Richard Paladino (Director of IT), Caucasian, who was also supposed to have his car equipped with GPS to be in compliance.

SEVENTY-FIRST: Upon information and belief, Richard Paladino did not have his car equipped with GPS, unlike plaintiff who was required to have one installed at Lee's direction.

SEVENTY-SECOND: Upon information and belief, Lee had plaintiff's car installed with GPS so he could over-supervise her and monitor her movements all due to his discriminatory animus towards Hispanics and for retaliation for engaging in protected activity as plaintiff's similarly situated non Hispanic co-worker was not subjected to this same type of disparate treatment.

SEVENTY-THIRD: This demonstrates that Lee was using business reasons as a pretext in order to further his discrimination against plaintiff due to her Hispanic race and retaliation against plaintiff for her engagement in protected activity.

SEVENTY-FOURTH: Plaintiff was later advised by Imran Saeed that Lee was tired of all the Hispanic hires.

SEVENTY-FIFTH: Upon information and belief, Lee was looking for a way to discipline and/or fire the Hispanic employees at Enzo, including plaintiff.

SEVENTY-SIXTH: Lee was treating plaintiff's similarly situated non-Hispanic co-workers in a more preferential way as compared to the Hispanic co-workers.

SEVENTY-SEVENTH: Plaintiff wrote to HR and asked them numerous questions and seeking updates but HR did nothing.

SEVENTY-EIGHTH: HR cancelled several meetings with plaintiff and never followed up with plaintiff regarding her formal complaints.

SEVENTY-NINTH: Due to Enzo's continued inaction, plaintiff's work environment became permeated with discrimination and retaliation.

EIGHTIETH: Due to this fact, plaintiff contacted the EEOC on February 1, 2019, and was told that she should email Enzo's senior management to inform them what has taken place.

EIGHTY-FIRST: On February 4, 2019, plaintiff wrote an email to Enzo's senior management, Barry Weiner, Doctor Dieter Shapfel and Kara Cannon explaining how she had complained to the EEOC about the discriminatory and retaliatory treatment she had been facing at Enzo and how Fortunato was not taking her concerns seriously.

EIGHTY-SECOND: That same day, approximately four (4) hours after sending the email informing Enzo that she had gone to the EEOC, Enzo terminated plaintiff's employment in sheer retaliation for engaging in protected activity.

EIGHTY-THIRD: Upon information and belief, plaintiff's position was then given to Newton, a non-Hispanic individual who was less qualified for the position of Manager of Phlebotomy as compared to plaintiff.

EIGHTY-FOURTH: Defendants' disparate treatment of plaintiff was motivated by an intent to discriminate against plaintiff on the basis of her race and to retaliate against her for her engagement in protected activity.

EIGHTY-FIFTH: Defendants treated plaintiff differently than other similarly situated employees who were not Hispanic.

11

EIGHTY-SIXTH: Due to the defendants' on-going discrimination and retaliation against plaintiff and their bad faith attempts to cause her harm, a hostile work environment had been created.

EIGHTY-SEVENTH: Plaintiff has suffered physical and mental anguish and severe emotional distress because of the discrimination, retaliation and the creation of the hostile working environment.

EIGHTY-EIGHTH: As a result of defendants' discriminatory treatment of plaintiff based on her race, retaliation for engaging in protected activity and the creation of the hostile working environment, plaintiff has suffered monetary damages.

EIGHTY-NINTH: Plaintiff has suffered adverse employment actions as a result of being subjected to defendants' discriminatory and retaliatory treatment.

**WHEREFORE**, plaintiff demands judgment against defendants as follows:

1. For a money judgment representing actual damages against Enzo for Race Discrimination in violation of plaintiff's rights under 42 U.S.C. 1981;

2. For a money judgment representing compensatory damages against Enzo for Race Discrimination in violation of plaintiff's rights under 42 U.S.C. 1981;

3. For a money judgment representing punitive damages against Enzo for Race Discrimination in violation of plaintiff's rights under 42 U.S.C. 1981;

4. For a money judgment representing actual damages against Lee for Race Discrimination in violation of plaintiff's rights under 42 U.S.C. 1981;

5. For a money judgment representing compensatory damages against Lee for Race Discrimination in violation of plaintiff's rights under 42 U.S.C. 1981;

6. For a money judgment representing punitive damages against Lee for Race Discrimination in violation of plaintiff's rights under 42 U.S.C. 1981;

7. For a money judgment representing actual damages against Fortunato for Race Discrimination in violation of plaintiff's rights under 42 U.S.C. 1981;

8. For a money judgment representing compensatory damages against Fortunato for Race Discrimination in violation of plaintiff's rights under 42 U.S.C. 1981;

9. For a money judgment representing punitive damages against Fortunato for Race Discrimination in violation of plaintiff's rights under 42 U.S.C. 1981;

10. For a money judgment against Enzo representing actual damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of 42 U.S.C. 1981;

11. For a money judgment against Enzo representing compensatory damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of plaintiff's rights under 42 U.S.C. 1981;

12. For a money judgment against Enzo representing punitive damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of plaintiff's rights under 42 U.S.C. 1981;

13. For a money judgment against Lee representing actual damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of plaintiff's rights under 42 U.S.C. 1981;

14. For a money judgment against Lee representing compensatory damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of plaintiff's rights under 42 U.S.C. 1981;

15. For a money judgment against Lee representing punitive damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of plaintiff's rights under 42 U.S.C. 1981;

16. For a money judgment against Fortunato representing actual damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of plaintiff's rights under 42 U.S.C. 1981;

17. For a money judgment against Fortunato representing compensatory damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of plaintiff's rights under 42 U.S.C. 1981;

18. For a money judgment against Fortunato representing punitive damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of plaintiff's rights under 42 U.S.C. 1981;

19. For a money judgment against Enzo representing actual damages for retaliation against plaintiff for engaging in protected activity in violation of plaintiff's rights under 42 U.S.C. 1981;

20. For a money judgment against Enzo representing compensatory damages for retaliation against plaintiff for engaging in protected activity in violation of plaintiff's rights under 42 U.S.C. 1981;

21. For a money judgment against Enzo representing punitive damages for retaliation against plaintiff for engaging in protected activity in violation of plaintiff's rights under 42 U.S.C. 1981;

22. For a money judgment against Lee representing actual damages for retaliation against plaintiff for engaging in protected activity in violation of plaintiff's rights under 42 U.S.C. 1981;

23. For a money judgment against Lee representing compensatory damages for retaliation against plaintiff for engaging in protected activity in violation of plaintiff's rights under 42 U.S.C. 1981;

24. For a money judgment against Lee representing punitive damages for retaliation against plaintiff for engaging in protected activity in violation of plaintiff's rights under 42 U.S.C. 1981;

25. For a money judgment against Fortunato representing actual damages for retaliation against plaintiff for engaging in protected activity in violation of plaintiff's rights under 42 U.S.C. 1981;

26. For a money judgment against Fortunato representing compensatory damages for retaliation against plaintiff for engaging in protected activity in violation of plaintiff's rights under 42 U.S.C. 1981;

27. For a money judgment against Fortunato representing punitive damages for retaliation against plaintiff for engaging in protected activity in violation of plaintiff's rights under 42 U.S.C. 1981;

28. For a money judgment against Enzo representing actual damages for Race Discrimination in violation of NYEL § 290 *et seq.*;

29. For a money judgment against Enzo representing compensatory damages for Race Discrimination in violation of NYEL § 290 *et seq.*;

30. For a money judgment against Enzo representing emotional damages for Race Discrimination in violation of NYEL § 290 *et seq.*;

31. For a money judgment against Lee representing actual damages for Race Discrimination in violation of NYEL § 290 *et seq.*;

32. For a money judgment against Lee representing compensatory damages for Race Discrimination in violation of NYEL § 290 *et seq.*;

33. For a money judgment against Lee representing emotional damages for Race Discrimination in violation of NYEL § 290 *et seq.*;

34. For a money judgment against Fortunato representing actual damages for Race Discrimination in violation of NYEL § 290 *et seq.*;

35. For a money judgment against Fortunato representing compensatory damages for Race Discrimination in violation of NYEL § 290 *et seq.*;

36. For a money judgment against Fortunato representing emotional damages for Race Discrimination in violation of NYEL § 290 *et seq.*;

37. For a money judgment against Enzo representing actual damages for retaliation against plaintiff for engaging in protected activity in violation of NYEL § 290 *et seq.*;

38. For a money judgment against Enzo representing compensatory damages for retaliation against plaintiff for engaging in protected activity in violation of NYEL § 290 *et seq.*;

39. For a money judgment against Enzo representing emotional damages for retaliation against plaintiff for engaging in protected activity in violation of NYEL §290 *et seq.*;

40. For a money judgment against Lee representing actual damages for retaliation against plaintiff for engaging in protected activity in violation of NYEL §290 *et seq.*;

41. For a money judgment against Lee representing compensatory damages for retaliation against plaintiff for engaging in protected activity in violation of NYEL § 290 *et seq.*;

42. For a money judgment against Lee representing emotional damages for retaliation against plaintiff for engaging in protected activity in violation of NYEL § 290 *et seq.*;

43. For a money judgment against Fortunato representing actual damages for retaliation against plaintiff for engaging in protected activity in violation of NYEL § 290 *et seq.*;

44. For a money judgment against Fortunato representing compensatory damages for retaliation against plaintiff for engaging in protected activity in violation of NYEL § 290 *et seq.*;

45. For a money judgment against Fortunato representing emotional damages for retaliation against plaintiff for engaging in protected activity in violation of NYEL § 290 *et seq.*;

46. For a money judgment against Enzo representing actual damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of NYEL § 290 *et seq.*;

47. For a money judgment against Enzo representing compensatory damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of NYEL § 290 *et seq.*;

48. For a money judgment against Enzo representing emotional damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of NYEL § 290 *et seq.*;

49. For a money judgment against Lee representing actual damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of NYEL §290 *et seq.*;

50. For a money judgment against Lee representing compensatory damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of NYEL § 290 *et seq.*;

51. For a money judgment against Lee representing emotional damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of NYEL § 290 *et seq.*;

52. For a money judgment against Fortunato representing actual damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of NYEL § 290 *et seq.*;

53. For a money judgment against Fortunato representing compensatory damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of NYEL § 290 *et seq.*;

54. For a money judgment against Fortunato representing emotional damages for the creation of a Hostile Work Environment based on plaintiff's Race in violation of NYEL § 290 *et seq.*;

55. For all attorney fees and costs;

56. For equitable relief; and

57. For such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff herein demands a trial by jury of all issues in this action.

Dated: Islandia, New York
October 17, 2019

**SCOTT MICHAEL MISHKIN, P.C.**

By: _____
Scott Michael Mishkin, Esq.
One Suffolk Square, Suite 240
Islandia, New York 11749
Telephone: 631-234-1154
Facsimile: 631-234-5048
*Attorneys for Plaintiff*